# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL K. MILLER,                :

    Plaintiff                :         CIVIL ACTION NO. 16-1004

    v.                           :         (JUDGE MANNION)

NANCY A. BERRYHILL[1],   :

    Defendant             :

## MEMORANDUM

Pending before the court is the report of Magistrate Judge William I. Arbuckle, (Doc. 21), which recommends that the decision of the Commissioner of Social Security, ("Commissioner"), be vacated and that this case be remanded to the Commissioner. No objections have been filed to the report.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner..." *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner, Social Security Administration.* Government Accountability Office. March 6, 2018. However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this suit.

Upon review, all of the findings reached by Judge Arbuckle in his report will be adopted, but the court will enter judgment as noted below.

## I. SUMMARY

Based upon the court's review of the record, the Commissioner's decision lacks the required substantial evidence to support denial of plaintiff's Disability Insurance Benefits, ("DIB"), and Social Security Income Benefits, ("SSI"). Furthermore, the court finds that: (1) the Commissioner has previously had ample opportunity to develop the record and has failed repeatedly to explain or support its determination with substantial evidence; and (2) the record, in this case, has been fully developed; there is substantial evidence that the plaintiff is disabled and entitled to benefits. In light of the foregoing, the Commissioner's decision will be reversed and the Commissioner will be directed to award plaintiff DIB and SSI.

## II. STANDARD OF REVIEW

When no objections are made to the report and recommendation of a magistrate judge, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also*

*Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D. Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

The record in this action has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, §§1381-1383f. The standard of review is whether there is substantial evidence in the record to support the Commissioner's decision. *Brown v. Bowen*, 845 F.2d 1211,1213 (3d Cir. 1988).

### III.  DISCUSSION

The Third Circuit Court of Appeals has established two scenarios where a district court may forego a remand to the Commissioner and award benefits to the claimant. Either the administrative record must be fully developed and

substantial evidence, on the record as a whole, indicates the claimant is disabled and entitled to benefits *Podedworny v. Harris*, 745 F.2d 210, 221-22, (3d Cir. 1984); or "the Commissioner has previously had ample opportunity to develop the record and has failed repeatedly to explain or support its determination with substantial evidence." *Eary v. Halter*, No. CIV.A. 00-2910, 2001 U.S. Dist. WL 695045, at *6 (E.D. Pa. June 18, 2001) (citing *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Both scenarios apply to the instant case and, as such, an award of benefits is appropriate.

The present case commenced over eight years ago with the initial filing of plaintiff's applications for DIB and SSI. Over the course of this lengthy period of time, in addition to filing his applications, plaintiff has appeared and testified at two hearings before an Administrative Law Judge, ("ALJ"), submitted medical evidence from numerous doctors, and filed two appeals to the district court. While the court's review of the record has established the record is fully developed, it also highlighted the numerous opportunities the Commissioner had to explain or support its decision with substantial evidence, yet failed to do so.

In order to find substantial evidence supporting a decision regarding an application for social security benefits, it is necessary for the ALJ, to analyze all probative evidence and set out the reasons for their decision. *Burnett v.*

*Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown*, 845 F.2d at 1213.

### A. Crohn's Disease

In his discussion of the evidence relating to plaintiff's regional enteritis, also known as Crohn's disease, the ALJ states, "these impairments are established by medically acceptable clinical and laboratory diagnostic techniques." (Tr. 465). He even acknowledges, "There is also evidence from acceptable medical sources to establish these as medically determinable impairments that can reasonably be expected to produce symptoms…" *Id.* Then, the ALJ concluded plaintiff's regional enteritis impairment did not constitute a disability under the Social Security Administration listing, ("listing"), requirements because the record does not reflect inflammatory bowel disease with hospitalization or surgery and his exams are benign and his testing reveals no active disease. *Id.* While the ALJ claims to have "given specific consideration" to Social Security Administration listing 5.00 (Digestive System), a detailed reading of the listing reveals, indeed, that was not the case. *Id.* The ALJ makes numerous references to plaintiff's negative test

results for Crohn's disease; and most notably, points out that plaintiff's testing showed no signs of "active" Crohn's disease in support of his denial of benefits. (Tr. 466, 469). The court is skeptical of the ALJ's use of "active" in describing Crohn's disease, because it appears to demonstrate that the ALJ was aware of the inflammatory nature of Crohn's disease; yet he made no mention of why plaintiff's Crohn's disease may not have resulted in positive test results. Even if the ALJ was not familiar with Crohn's disease, his "specific consideration" of Listing 5.00 should have revealed the fact that Crohn's disease is an inflammatory disease of the bowels and that "Remissions and exacerbations of variable duration are the hallmark of IBD (Inflammatory Bowel Disease)." Listing 5.00(E).

The ALJ failed to consider that plaintiff could have been in remission during his tests, thus, resulting in negative test results. Therefore, since the ALJ failed to consider this probative evidence that is both considered to be the "hallmark" of IBD and offers a strong counter-argument to the ALJ's conclusions, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).

**B. Mental Impairments**

Also, in his decision, the ALJ found, "The severity of the claimant's mental impairments does not meet or medically equal the criteria of listings 12.04, 12.08, and 12.09." (Tr. 466). Specifically, the ALJ held that plaintiff's mental impairment did not result in at least two of the listing 12, paragraph (B) criteria. *Id.* The ALJ decided that plaintiff had moderate difficulties in social functioning, and in concentration, persistence, or pace. *Id.* However, if the ALJ found that plaintiff had marked restrictions in each of these areas, which are considered to be somewhere between moderate and extreme restrictions, plaintiff would be considered disabled and entitled to benefits. (Tr. 463, 466). In arriving at his decision, the ALJ chose to assign little weight to plaintiff's Global Assessment of Functioning, ("GAF"), scores. The ALJ's decision to effectively disregard plaintiff's GAF scores resulted in a failure to consider probative evidence that indicates plaintiff is disabled and thus, also lacks substantial evidence.

Over a period of four years, plaintiff received GAF scores from numerous doctors indicating that he had severe mental impairments. Even the ALJ acknowledged that plaintiff's GAF scores indicate marked, extreme, or severe limitations. (Tr. 473). Ultimately, however, the ALJ chose to afford little weight to plaintiff's GAF scores because,

> "One would expect someone with GAF scores indicating marked, extreme, or severe limitations to exhibit objective findings of such limitations that would be observable and included consistently in the objective mental status findings. One would also expect that such a person would require treatment that is more intensive, or at least be referred for such treatment."

*Id.* While plaintiff may not have exhibited signs of marked, extreme, or severe impairment during the ALJ hearing, the record indicates that plaintiff exhibited much more than moderate impairment in his social functioning, and in his concentration, persistence, or pace. Plaintiff presented to numerous doctors over a lengthy period of time complaining of severe depression and extreme suicidal thoughts. On one occasion, plaintiff even indicated that he tried to hang himself. (Doc. 20 Exhibit 26F). In addition, plaintiff was admitted to the hospital for his suicidal thoughts on multiple occasions, where he was evaluated with extremely low GAF scores.

During one of plaintiff's admissions to the emergency room, it was noted that after speaking on the phone with counselors, plaintiff became paranoid that the police were going to arrest him, so he armed himself by grabbing knives and wrapping chains around his fists. (Doc. 8 Exhibit 8F). Additionally, his treating physician noted that he was still suicidal, but he planned to be killed by the police. *Id.* In reference to his social functioning, the notes point out that plaintiff is homicidal to anyone that sets him off and that plaintiff feels

that if anybody is going through anything good in their life that he should be able to hurt them. *Id.*

Plaintiff's GAF scores consisted of one 60, 45, 35-40, 35-40, 35, 29, 10-15, and most notably a 5. The only score that plaintiff earned that demonstrates moderate symptoms as the ALJ suggests is the 60. *See Diagnostic and Statistical Manual of Mental Disorders*, at 34 (4th ed.). Every other GAF score earned by plaintiff indicates at a minimum serious symptoms and/or impairment and, at a maximum, "persistent danger of severely hurting self or others; or persistent inability to maintain minimal personal hygiene; or serious suicidal act with clear expectation of death." *Id.* In his decision to assign little weight to plaintiff's GAF scores, the ALJ noted that "GAF scores are one time personalized snap shots by the provider and are not subject to any empirical verification…" and that "there are no longitudinal signs or objective findings on mental examinations to support such low GAF scores." (Tr. 473). However, from May 2010 to October 2014, plaintiff received GAF scores on at least six different occasions from different doctors indicating that plaintiff had at least severe symptoms and/or impairments.

Thus, this court finds that the severity of plaintiff's GAF scores over a period of at least four years indicates that plaintiff had marked mental impairment in social functioning, concentration, persistence, and pace and,

therefore, satisfies the listing 12, paragraph (B) requirements, which entitles plaintiff to receive benefits.

This court finds that: (1) the Commissioner has previously had ample opportunity to develop the record and has failed to explain or support its determination with substantial evidence; and (2) the record, in this case, has been fully developed; and there is substantial evidence that the plaintiff is disabled and entitled to benefits. "When faced with such cases, it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." *Podedworny*, 745 F.2d at 222.

### IV. CONCLUSION

In light of the foregoing, the Commissioner's decision will be reversed and the Commissioner will be directed to award plaintiff DIB and SSI. An appropriate order shall follow.

*S/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 20, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1004-01.docx